| 87  733|
| 92  171|
| 87  733 |
|d123 107|
|123  108|

Rhoda B. Twiss, Appellee, v. Guaranty Life Association *et al.*, Appellants.

1. **Mutual Benefit Associations**: CONTRACT TO PAY LOSSES OF ANOTHER ASSOCIATION: ULTRA VIRES. A contract by a mutual benefit association to pay the death losses of another association in consideration of the transfer of the assets and membership of such other association, is, in the absence of express authority in its articles of incorporation, *ultra vires* and void.

2. ———: ———: ESTOPPEL. The purchasing association will not be estopped from denying its liability under such contract, after the receipt of its benefits, where it appears that the insured has not been prejudiced by such transfer, because of the bankruptcy of the association in which he was a member at the time the contract was made.

*Appeal from Polk District Court.*—Hon. W. F. Conrad, Judge.

Thursday, May 11, 1893.

This is an action to recover the amount claimed to be due upon a policy of insurance on the life of David M. Twiss. The plaintiff herein is the beneficiary named in said policy. No defense was made in behalf of the defendant the Guaranty Life Association, and a judgment was rendered against it for the sum of two thousand dollars and interest, being the full amount claimed. The defendant the Southwestern Mutual Benefit Association made defense. A trial by jury was had, which resulted in a verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*Caswell & Meeker*, for appellant.

*Mitchell & Dudley* and *Nourse & Nourse*, for appellee.

ROTHROCK, J.—I.   It is admitted that David M.
Twiss held a valid policy of insurance upon his life in
the Guaranty Association, and that the
same was in full force at the time of his
death, which occurred in the month of May,
1889, and that the plaintiff herein is the
beneficiary under said policy.   The appellant was in no
way a party to the contract of insurance, but it is
claimed that it is liable to pay the amount of the loss,
by reason of an alleged written contract, which it is
claimed was entered into between the said two insur-
ance companies after the death of said David M. Twiss.
The written agreement was made and entered into by
one H. S. Halbert, who was secretary of the South-
western Association, and by one Pickell, who styled
himself president of the Guaranty Life Association.
The following is a copy of said written agreement:

1. MUTUAL bene-
fit associa-
tions: contract
to pay losses
of another as-
sociation:
ultra vires.

"This agreement, made and entered into between
the Southwestern Mutual Benefit Association, of Mar-
shalltown, Iowa, and the Guaranty Life Association, of
Des Moines, Iowa, and H. M. Pickell, as trustee for
the benefit of the policy holders, severally, of said last
named company, witnesseth; that the said company
first above named hereby agrees with the said Guaranty
Life Association and H. M. Pickell, as trustee, that it
will, in consideration of the transfer to it by the Guar-
anty Life Association of all its assets, books, and fur-
niture, perform all and singular the undertakings,
agreements, and covenants heretofore made and now
outstanding against said Guaranty Life Association in
favor of its policy holders, and will pay all its liabili-
ties for losses unpaid.   In consideration of the premises,
the said Guaranty Company agrees that it will, and it
does hereby, transfer and convey unto said first above
named company all its books, furniture, and its assets
of every kind and nature, and agrees not to further

transact its business of life insurance in the state of Iowa or elsewhere.

[Signed]

"Southwestern Mut. Benefit Ass'n,
"By H. S. Halbert, Secretary.
"Guaranty Life Association,
"H. M. Pickell, President.
"Des Moines, Iowa, June 18th, 1889."

There can be no doubt that, if this were a valid agreement, it is an end of the controversy. It plainly provides that the appellant shall pay all the liabilities of the Guaranty Company for losses unpaid. The policy in suit was a valid, existing, unpaid loss. But it is contended in behalf of the appellant that the written agreement is void because it was an act and undertaking not authorized by the corporate articles of association of either of the defendants, and that it was entered into by the parties, and the same was signed, without authority from their respective boards of directors. It is further claimed that said Pickell induced said Halbert to sign the agreement by certain alleged false and fraudulent representations as to the resources of the Guaranty Company, and that said agreement is void by reason of said fraud. We do not regard it necessary to examine this question of fraud. The evidence is in conflict with reference thereto, and a jury might properly find for either party on that issue. And it is unnecessary to determine whether Pickell, the alleged president of the Guaranty Life Company, was authorized by his board of directors to make the contract upon which the action is founded.

We have directed our attention to the question as to whether the contract was such an obligation as the Southwestern Association was authorized to make by its articles of incorporation. If it was in excess of its power, it is void, and can not be enforced as a contract; and while in such case, where an *ultra vires* contract

has been partly performed, the party repudiating it may be compelled to account for whatever benefits may have been received by reason of it, yet this exception, or rather modification, of the rule, has no application in the case at bar. The fact is that the appellant did not receive any real benefit from the transaction. It paid the sum of one thousand, five hundred dollars to the said Pickell, and received in return about one thousand, two hundred dollars, and some office furniture worth about one hundred dollars. It is true that the two persons who assumed to make this contract undertook to transfer the membership of the Guaranty Company to the appellant company, and, in response to a circular sent out to said members, about four hundred of them did agree to the transfer. Much has been urged in argument to the effect that the appellant, by reason of this accession of members, has received a sufficient consideration to uphold the transaction, or to require it to pay the losses of the Guaranty Company. We do not think that this claim can be maintained. The aggregate amount of said losses is about eleven thousand dollars. If the appellant should pay that amount for four hundred members it would be a palpable fraud upon all of the other members of the appellant company. It would be the payment of a bonus of about twenty-five dollars each for new members. It would be a withdrawal and appropriation of eleven thousand dollars of trust funds, without the semblance of any authority to do so, either by the insurance laws of this state, or by any provision of the articles of incorporation. This proposition is so plain that it requires no further consideration.

That the making of the contract was in excess of the power of the appellant there should be no question. We need not set out the articles of incorporation or the by-laws. It is enough to say that the contract, so far as it attempts to bind the appellant, is contrary to the

whole scope and purpose of the corporation. The payment of these losses would be a diversion of trust funds to other objects than those authorized by the charter, and would be a crime. Code, section 1072. Both of these companies were organized upon the assessment plan. The assessments were made quarterly, and a fixed amount was required to be paid. A certain amount was set apart for an expense fund, and the remainder was designated as the mortuary fund. The articles of association explicitly provide as to the disposition to be made of these several funds. There is not one word in the whole record which by the remotest implication can be construed as authorizing the secretary, or even the board of directors, to use any part of the proceeds of these quarterly payments for such a purpose as paying the death losses of any other insurance company. It is unnecessary to further discuss this question. It appears to us that the undertaking to pay the losses of the Guaranty Company is plainly in excess of the power of the appellant or any of its officers. The facts of the case bring it within the rules announced in *Lucas v. White Line Transfer Co.*, 70 Iowa, 542; *Davis v. Old Colony Railway Co.*, 131 Mass. 258. And see, also, 2 Morawetz on Private Corporations, sections 580, 581, 591, 607, 609.

II. But it is claimed in behalf of the appellee that the contract is executed, and that the appellant is estopped from questioning its validity. As we have said, where an *ultra vires* contract is made and performed on one side, the other party can not be permitted to enjoy the benefits received, but will be required in a proper action to account; in other words, the doctrine of a want of power to contract can not be invoked to aid a party to perpetrate wrong and injustice. But this case presents no such features. It is conceded that the Guaranty Company was bankrupt when the contract in question

2. ———: ———: estoppel.

was made. Complaint had been made to the state auditor that it was not paying its death losses promptly, and it was unable to obtain a certificate authorizing it to continue in business. It is said by counsel for the appellee, in argument, that for the payment of these death losses the Guaranty had no means whatsoever, except its annual premiums, payable in quarterly installments. It had no certificate authorizing it to do business after March, 1889. The death losses had been such as to require the proceeds of the mortuary calls to meet the claim, and, in addition, had used up the reserve fund. It was in this condition when the insured, David M. Twiss, died, and the claim of the plaintiff accrued.

It is urged with apparent confidence that, as there were some five hundred and sixty-seven members of the Guaranty Company when it failed, the appellant should be required to pay its death losses upon the ground that by the contract it acquired some four hundred new members. We have already said that the appellant was not authorized to buy members in this way, and on any such terms. Let us see whether there is any ground for the alleged estoppel. If there is any reason for such a claim, it must be because the appellant, by seeking a transfer of the membership, put it out of the power of the plaintiff to compel payment by the Guaranty Company. The wrong and injury to the plaintiff, if any, consists in taking away the membership so that the members did not pay their quarterly dues to the Guaranty Company, by the payment of which the plaintiff would have received the amount due on the policy. It appears to us that this is a most unwarranted assumption. It is based upon the theory that, if the contract had not been made, the five hundred and sixty-seven members would have continued to pay quarterly installments to the Guaranty Company until all of the death claims were satisfied

and all other claims paid. That this would have occurred is not only not probable, but highly improbable. Members of such organizations are not more likely to pay money for nothing than other people. The fact is, the record shows beyond all question, that, if the contract had not been made between the two companies, the plaintiff's claim was absolutely worthless. That the position of the plaintiff was in any manner changed, to her prejudice, by the contract, not only does not appear, but the face of the transaction shows that it was not. That is about all there is of this case. It was tried by a jury, and the defendant moved that a verdict be directed for the defendant. The motion was overruled. We think it should have been sustained, on the ground that the conceded facts in the case showed that the plaintiff was not entitled to recover. Reversed.