## Laura Clark et al., Appellants, v. Fraternal Tribunes and Northern Life Insurance Company of Illinois et al., Appellees.

INSURANCE, § 24*—*when evidence insufficient to show consolidation or conspiracy to defeat insurance claims.* On a bill filed by members of a fraternal insurance company against such company and a life insurance company charging a conspiracy on the part of the officers of the two companies to defraud complainants of their insurance claims, evidence *held* insufficient to show a consolidation of the two companies or to show such fraudulent conspiracy, it appearing that the life insurance company received nothing from the fraternal insurance company except a small increase in policy holders from its members.

Appeal from the Circuit Court of Sangamon county; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed May 5, 1914. Rehearing denied June 25, 1914. *Certiorari* denied by Supreme Court (making opinion final).

GEORGE W. KENNEY and A. G. MURRAY, for appellants; EUGENE E. BONE, KAPLAN & KAPLAN, ALONZO HOFF, ROBERT MATHENY, GRAHAM & GRAHAM, BARBER & BARBER, SMITH & FRIEDMEYER, HAMILTON & CATRON, C. F. MORTIMER, BELLATTI, BARNES & BELLATTI, B. O. SUMNER, MORPHY, EWING & BRADFORD, E. L. CHAPIN, SAMPSON & PUTTING, A. C. EDIE, CHARLES HARRIS, WILLIAM B. RISSE, WILSON & WALL, MATHEW J. HUSS, A. W. FULTON, R. WOLFNER, SAFFORD & GRAHAM, C. I. McNETT, THOMAS P. REEP, CHARLES H. WOODBURN, SNOW & HAIGHT, B. O. WILLARD and MANLEY & KRAMER, of counsel.

GILLESPIE & FITZGERALD and BARRY & MORRISSEY, for appellees.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

This appeal seeks to reverse the decree entered in said cause in the court below dismissing the bill of appellants for want of equity. The American Home Circle was a fraternal beneficiary society organized under the laws of this State in 1897 and engaged in fraternal insurance business. The Fraternal Tribunes was also a fraternal beneficiary society organized in the same year under the laws of this State and engaged in fraternal insurance business. In November, 1908, the officers of the Circle sought a consolidation of that association with the Tribunes and furnished a statement to the latter showing that the Circle had assets on hand amounting to practically $19,000, and that its current death losses and other liabilities amounted to about $35,000. On November 19, 1908, a contract was entered into between the Circle and the Tribunes whereby the members of the Circle were reinsured in the Tribunes and the Tribunes assumed the obligations of the Circle. As a matter of fact at this time the Circle had no assets and had liabilities of about $125,000. The Tribunes at this time was solvent and had an accumulated surplus in an emergency fund of $57,000. After the merger of the two associations was consummated the old officers of the Tribunes resigned and the officers of the Circle were elected in their places, and certificates of membership in the Tribunes were issued to the members of the Circle. The $57,000 in the emergency fund of the Tribunes was drawn out by the new administration of that association and was fraudulently used in some manner unexplained. In July, 1909, an attempted dissolution of the Circle and Tribunes was made and the then officers of the Tribunes resigned and new officers were elected, and it was found that in addition to the loss of the $57,000 in the emergency fund there was a further shortage in the treasury of the Tribunes of over $12,000. The new officers attempted to collect the said amounts from the retiring officers of the Tribunes and succeeded in collecting $48,500 in cash, took

a note for $8,500 from Dr. Craig, the former medical examiner, which proved to be of no value, and had to charge off the sum of $12,136 against the ex-treasurer. All of the appellants, with one exception, are beneficiaries under policies originally issued by the Circle and the total of their claims amounts to about $100,000. Many of these claims accrued prior to the merger of the two associations.

The Tribunes continued in business until about March 21, 1910. Suits had been commenced against the Tribunes by the beneficiaries under the certificates issued by the Circle claiming an aggregate amount of over $80,000. In several of these suits judgments had been rendered against the Tribunes. By reason of these conditions and the exhaustion of the funds of the Tribunes it became impossible for the Tribunes to defend the suits so instituted against it, to furnish bonds to appeal from the judgments, or to meet its obligations, or continue in business, and in the opinion of its officers a receivership for the Tribunes was inevitable. An effort was made to provide the living members of the Tribunes with reinsurance, and negotiations were had with the appellee, the Northern Life Insurance Company of Illinois, which is an old line legal reserve insurance company, organized under the laws of this State. The officers of the Tribunes and the Northern Life sought the advice of the insurance superintendent of the State and were informed by him that there would be no objections to the Northern Life insuring the members of the Tribunes as individuals, but that under the laws of this State there could be no consolidation between the two corporations and also that the Northern Life would not be authorized to consolidate with an insolvent corporation and assume its liabilities.

At a meeting of the Supreme Tribunal of the Tribunes the president of the Northern Life, in an oral

statement to that body, explained the different forms of policies offered by said Company and that the Northern Life would not require a medical examination of any of the members of the Tribunes if all, or nearly all, would insure in the Northern Life; that he would offer such members rates of insurance from $2 to $4 lower than the average because the Company would not be at the expense of paying commissions and that the members could pay their usual assessment for the month of April, and further stated that he had been advised by the insurance department that in order to protect the Company, if a member would not submit to an examination, it would be necessary to retain a lien upon his policy. The Supreme Tribunal passed a resolution urging the members to accept the proposition of the Northern Life. Following this meeting the Northern Life sent a circular to the members of the Tribunes stating, among other things, as follows:

"6. You are not compelled to take a medical examination but if you do not take it, or are not able to pass, your policy will be scaled for the first few years. The amount payable on a $1,000.00 policy, in case you do not pass the medical examination will be $600.00 the first year, $650.00 the second year, $700.00 the third year, and so on up to $1,000.00. Understand that you can take a medical examination, at our expense, and have insurance for the full $1,000.00 right from the start.

7. The Northern Life offers to insure your entire membership whether sick or well. But it cannot take care of your sick unless your well people come too. To take the sick without the well is unfair and impossible.

Get examined at once, at the Company's expense. If you fail to pass, we will accept you anyway as soon as two-thirds of the members of your Tribunal have accepted our proposition.

Your insurance takes effect as soon as it is approved in the Home Office of the Company, without waiting

for the policy to reach you. You can pay monthly, quarterly, semi-annually or annually as you please. It costs you not a penny extra to have The Northern Life issue you this policy and carry your protection for the month of April. After that your rate will be such as is indicated in the table in this folder.    *    *    *

15. If you have paid in advance, send in the card and The Northern will carry your insurance from April 1st to such date as your advance payments will carry you at the new rate."

At this time a number of members of the Tribunes had made advance payments on their policies to the amount of about $4,000. To protect these advance payments the Supreme Tribunal transferred to the Northern Life by bill of sale all its personal property consisting of office furniture, etc., of the value of about $1,000, and the Craig note for the nominal consideration of $4,000. The bill of sale provided that the same should apply and be credited on the insurance of those members of the Tribunes who had paid in advance of the month of March. Numerous circulars, postal cards and letters were mailed by the Northern Life and the Supreme Tribunal to the members of the Tribunes explaining the proposition of the Northern Life and urging said members to accept the same. About ten per cent. of the members of the Tribunes accepted policies in the Northern Life, all of whom submitted to and passed a medical examination.

The bill alleges many of the above facts and others, and charges a conspiracy on the part of the officers of the two corporations to defraud appellants of their claims, and that by reason of the facts alleged the Northern Life became liable to appellants for the amounts of their respective claims. The bill does not charge in words that the two corporations became consolidated, but the contentions of appellants are: First, that there was a consolidation by virtue of the statute; second, that if there was not a statutory con-

solidation there was a consolidation in fact and that the appellee, the Northern Life, having received the benefit of such consolidation, is estopped from denying the consolidation; and third, if there was neither a statutory consolidation nor one in fact, still all the appellees are liable to appellants on the theory of the commission of a tort by appellees in fraudulently disrupting the Tribunes and thereby depriving appellants of their means of making their claims.

There is no basis for the contention that there was a statutory consolidation. Even if the Northern Life and Tribunes had the power to consolidate under the laws of this State, no attempt whatever was made to comply therewith and it is unnecessary to discuss this phase of the question.

We do not think the proof shows there was a consolidation in fact. No contract was entered into between the two corporations. While the Northern Life offered to issue policies to all the members of the Tribunes it was upon the condition that all, or nearly all, or at least two-thirds of the latter, would apply for policies in that Company. Only a small proportion of the Tribunes' membership applied for policies in the Northern Life. It is earnestly insisted that the transfer of the personal property above mentioned is strong evidence of such a consolidation. This property, as above stated, was of small value and was given to protect the members of the Tribunes who had made advance payments on their assessments. The Craig note was worthless and the other property did not exceed the value of $1,000. After the bill in this case was filed, appellants, or some of them, filed another bill asking for the appointment of a receiver for the Tribunes and said receiver was appointed and said personal property reconveyed to the Tribunes, and by it turned over to the receiver, so, as a matter of fact, the Northern Life received nothing from the Tribunes except the value of the new business acquired

by issuing policies to a small portion of its members. It would be an anomalous situation to hold that there was a consolidation between these two companies while there was a receiver administering the estate of one of them, who had possession of all of its assets.

We are of the opinion that proof is not sufficient to show that there was a fraudulent conspiracy on the part of the Northern Life and the Tribunes to deprive appellants of their claims. The Northern Life has received nothing from the Tribunes except a small increase in policy holders from its members. The proof does not show the loss of these members has to any extent jeopardized the rights of appellants in collecting their claims, and, even if it did, such fact would not be a basis for liability against defendants. *Twiss v. Guaranty Life Ass'n*, 87 Iowa 733.

The record in this case is very voluminous and we have not attempted to mention all the facts appearing therein, nor to discuss all the points raised in appellants' brief and argument, but have commented on only such as appear to be most material and controlling. After a careful consideration of all the evidence and the points raised in regard thereto, we are of opinion that the proofs do not sustain the allegations of the bill and that the decree entered in the court below dismissing the bill for want of equity is proper, and it will therefore be affirmed.

*Affirmed.*