## SACHS et al. v. OHIO NAT. LIFE INS. CO.
### No. 7332.

Circuit Court of Appeals, Seventh Circuit.
Nov. 28, 1940.

Isidore Brown, Albert Langeluttig, and Lawrence J. West, all of Chicago, Ill., for appellants.

Karl Edwin Seyfarth and Benton Atwood, both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

The appellants as creditors of the Roseland State Savings Bank (Illinois corporation), instituted suit in an Illinois state court to enforce the constitutional superadded liability of the stockholders of the state bank to its creditors. In our case the stockholder in question is the American Old Line Life Insurance Company (Illinois corporation), hereinafter also referred to as the "American Old Line" or the "Insurer," and the appellee is the Ohio National Life Insurance Company (Ohio corporation), hereinafter also referred to as the "Ohio National" or the "Reinsured," which agreed to reinsure the policies of the former upon certain terms and conditions. When the Ohio corporation was made a party defendant in the state court, it removed the separable controversy as to it to the District Court where later it moved for summary judgment. The court rendered judgment pursuant to de-

fendant's motion and the appellants appealed therefrom.

In 1930 the American Old Line (organized in Illinois to write life insurance) was desirous of discontinuing business. At this time it owned stock in the Roseland State Savings Bank which carried with it a contingent liability of $139,800 (the constitutional superadded liability). In 1930 the Ohio National organized in Ohio to insure lives and to acquire such property as was "authorized or permitted" under Ohio laws, was willing to enlarge its total insurance by reinsuring the policies of the American Old Line. Under the Ohio statutes the power to invest in corporate stock was prohibited except in enumerated instances, [1] the power to accept a business risk unrelated to insurance was prohibited, [2] and the power to reinsure the policies of other insurance companies was regulated. [3]

Accordingly on November 19, 1930, the Illinois and the Ohio corporations entered "into a re-insurance agreement for reinsurance by the Re-insurer of the policies of the Insurer upon the following terms and conditions." Of these terms and conditions four are very pertinent here: (1) "On or before January 10, 1931, after the approval of this re-insurance agreement by the duly constituted officials of the States of Illinois and Ohio, the Insurer shall trans-

---

[1] Section 9357 of the Ohio General Code (as amended by laws enacted in 1913 and 1925) provides that domestic insurance companies may invest in (1) government securities, (2) real estate bonds and mortgages, (3) loans upon the pledge of assets designated in (2), and (4) loans upon its own policies.

On the other hand Section 9358 stated that Section 9357 does not prohibit the acceptance of "any other assets than therein enumerated in payment of debts due it, in order to protect its interests, or from acquiring real estate for its own use, or by foreclosure * * *."

[2] Section 9385 of the Ohio General Code provides that no domestic insurance company "shall undertake any business or risk, except as herein provided," and that no domestic or foreign company transacting the business of life insurance "shall be permitted or allowed to take any kind of risks, except those connected with, or appertaining to making insurance on life * * *."

[3] The following provisions are taken from the Ohio General Code of 1910, as amended by laws enacted in 1913 and 1925:

Section 9351. *Consolidation and Reinsurance.* "No company organized under the laws of this state to do the business of life * * * insurance * * * shall consolidate with any other company, or reinsure its risks * * * with any other company, or assume or reinsure the whole of or any portion of the risks of any other company, except as hereinafter provided. Nothing herein contained shall prevent any such company from reinsuring a fractional part of any individual risk * * * in a company duly authorized to transact business in this state, or, with the permission of the superintendent of insurance, the whole of such risk; but no company, except as hereinafter provided, shall reinsure any part of any of its risks when the aggregate amount of its risks reinsured shall equal fifty per cent. of its total insurance in force."

Section 9352. *Petition to Superintendent of Insurance.* "When any such company proposes to consolidate with any other company, or enter into any contract of reinsurance, it shall present its petition to the superintendent of insurance, setting forth the terms and conditions of the proposed consolidation or reinsurance, and praying for the approval or of any modification thereof, which the commission hereinafter provided for may approve."

Section 9353. *Notice to Policy-holders.* "The superintendent thereupon shall issue an order of notice, requiring notice to be given by mail to the policyholders of such company, of the pendency of such petition, and the time and place at which it will be heard * * *."

Section 9354. *Commission to hear and determine Petition.* "The governor * * *, the attorney-general, and the superintendent of insurance, shall constitute a commission to hear and determine upon such petition. * * *"

Section 9355. *Approval and Order of Commission.* "If satisfied that the interests of the policy-holders of such company or companies are properly protected * * *, the commission may approve and authorize the proposed consolidation or reinsurance * * *. Such consolidation or reinsurance shall only be approved by the consent of all the members of the commission, whose duty it will be to guard the interests of the policy-holders of any such company or companies proposing to consolidate or reinsure."

Section 617. *Duties of Superintendent of Insurance.* "The superintendent of insurance shall see that the laws relating to insurance are duly executed and enforced. * * *"

fer and assign to the Reinsurer all of its contracts, assets and property [except a few assets constituting part of the purchase price] * * *, including all policy contracts in force;" (2) "Upon such transfer the Reinsurer shall assume and agree to discharge all of the contracts * * * and liabilities of the Insurer * * * and in addition pay the Insurer * * * $1,-388,750 * * * [and] Thereafter said Insurer shall proceed to liquidate the Company and surrender its corporate charter"; (3) the "Insurer guarantees and warrants the genuineness and accuracy of its records and books of accounts * * * in reliance upon which this agreement is made"; and (4) "The Re-insurer, after the transfer of said policies to it, shall be directly liable at the suit of and to any policy holder upon any such policy."

This reinsurance contract was consummated on January 8, 1931. On that date the American Old Line transferred all of its assets to Ohio National except four items totaling $607,030 which according to the contract constituted part payment of the purchase price of $1,388,750. These items were (1) corporate stocks valued at $382,030; (2) real estate valued at $50,000; (3) collateral note worth $25,000; and (4) government bonds worth $150,000. Included in item (1) was the Roseland State Savings Bank stock which at the time carried with it the contingent liability of $139,800 but which according to the pleadings of defendant was not listed or shown on the records and books of account of the American Old Line. As to item (1) it is noted that the Ohio statutes prohibited life insurance companies from acquiring bank stock (see foot note 1). In return for the transfer of assets and policy contracts the Ohio National (1) assumed the discharge of the "contracts * * * and liabilities of the Insurer" and (2) paid over $781,720 in cash which when added to the $607,030 in assets above retained made up the sum of $1,388,750.

Thereafter on January 10, 1931, the American Old Line retired from the business of writing life insurance and prepared for liquidation of the company and ultimate distribution to its stockholders. Later, on July 6, 1931, the Roseland State Savings Bank ceased to do business and on that date the constitutional liability of $139,800 accrued in favor of the creditors of the bank. Immediately on the same day the appellants as creditors of the bank, started suit in the state court to enforce the superadded bank stock liability against the stockholders. Among those stockholders was the American Old Line which owned a substantial block of stock and was the stockholder of record. On August 13, 1931, the state bank was closed. On June 3, 1934, the American Old Line's liability was fixed at $139,800 and on July 3, 1935 (four years after commencement of the suit) the appellants joined the Ohio National as party defendant.

The reinsurance contract provided for its execution by the parties on or before January 10, 1931, after the "duly constituted officials of the States of Illinois and Ohio" had approved the contract. The facts already related above show that this reinsurance agreement was carried out on January 8, 1931, and it is undisputed that the agreement received the approval of the insurance officials of Illinois. The record also shows that the Ohio National filed its petition for approval with Ohio's Superintendent of Insurance, also a member of the Commission provided for in the Ohio statutes, who in fact did approve the reinsurance agreement. The record further shows that in this instance the Superintendent of Insurance did not issue an "order of Notice" to the policyholders of the Ohio National and the Commission was not convened. See footnote 3 for the pertinent sections of the Ohio law.

It appears from the record that it had been the practice in Ohio for the Superintendent of Insurance acting alone to approve the petition in reinsurance cases such as the one here before us. In this regard the District Court found that "In numerous instances the insurance department waived the requirement of the giving of notice by mail and the publication of the order of notice, as well as the appointment of a commission, and instead the Superintendent of Insurance, acting alone, approved the proposed reinsurance agreements." This practice of approval by the Superintendent of Insurance was customary especially where the reinsurer was an Ohio corporation and where in the judgment of the Superintendent of Insurance the reinsured was not particularly large.

In the complaint the appellants claim that the Ohio National is required by virtue of the reinsurance contract above described to pay the bank stockholder's liability fixed at $139,800. Obviously the complaint is based on the theory that as part of the con-

sideration for the transfer of assets and policy contracts by the American Old Line, the Ohio National agreed to pay or assumed the payment of the bank stockholder's liability which subsequently accrued against the American Old Line (the owner and holder of the bank stock). To this complaint the Ohio National pleaded several defenses among which were the following: (1) the Ohio National did not agree to pay, or assumed the payment of, the bank stockholder's liability; (2) if assumption of the bank stockholder's liability is considered part of defendant's consideration for the reinsurance agreement, the assumption thereof was ultra vires; and (3) the reinsurance agreement was void for non-compliance with the Ohio statute.

After the facts above related had appeared of record by way of admission or deposition, the Ohio National moved for summary judgment on the strength of defense (3) stated in the preceding paragraph. The District Court rendered judgment pursuant to this motion after stating his findings of fact which are substantially as already related and making three conclusions of law thereon. He concluded that the reinsurance agreement was void for statutory noncompliance, that the assumption of bank stockholder's liability was ultra vires and that the defendant was not estopped to assert these defenses. We note that defendant's motion for summary judgment raised only defense (3), but in this opinion we shall review the District Court's disposition of defenses (2) and (3).

*Validity of Reinsurance Agreement.* We have here a situation where one insurance company assumes the risks of another company retiring from business and agrees to protect it from liability on the policies thus assumed. Such an agreement is known as an agreement of reinsurance and in the main there are two types of reinsurance agreements. In the case at bar the agreement relates to many risks and contains a direct assumption of liability to the policyholders. A more usual type is the agreement relating to individual risks which contain no direct assumption of liability to the policyholders. This difference does not appear material from the standpoint of corporate power to reinsure, for the latter type of reinsurance agreement may well contain an obligation running to the policyholder. Logic would then compel the thought that the power to reinsure individual risks and the power to reinsure many risks manifestly emanates from the same corporate source. It is possible that the exercise of the latter power might entail more serious consequences than the exercise of the former, and hence conceivably invite closer legislative supervision, but this would not change the thesis expressed above. It also appears that much of the case-law on the subject of reinsurance deals with agreements relating to individual risks, but for the reasons stated in this paragraph we believe that this case-law is also applicable to the type of reinsurance agreement relating to many risks.

In his brief counsel for the Ohio National states that "insurance companies have no implied power to execute reinsurance agreements." In support of this statement he cites Allison v. Fidelity Mut. Fire & Ins. Co., 81 Neb. 494, 116 N.W. 274, 129 Am. St.Rep. 694; Twiss v. Guaranty Life Ass'n, 87 Iowa 733, 55 N.W. 8, 43 Am.St.Rep. 418; and Smith v. St. Louis Mut. Life Ins. Co., 2 Tenn. Ch. 727. The Allison and Twiss cases do support the proposition that mutual companies and benefit societies lack the implied power of reinsurance but counsel may well have observed that other non-Ohio cases have, tacitly at least, recognized the right of mutual companies to write reinsurance. See 1 Couch, Insurance, § 262. The Smith case involved not so much the power of the reinsured company to procure reinsurance which was expressly authorized by its charter, but the effect of such an agreement of reinsurance upon the policyholders of the reinsured company who elected not to be bound thereby. We are satisfied that these cases do not support the statement quoted, and moreover we are certain that they do not express the Ohio case-law on the subject of reinsurance.

In the instant case we are not concerned with the American Old Line's power to procure re-insurance of its risks. On this point, however, it has been said that "The right to determine * * * how long it [the defendant life insurance company] should continue to insure lives, in view of its present and probable success or failure, and whether it should continue an unprofitable business to the ultimate loss of itself and its policyholders, or reinsure its risks in some other company and prevent greater loss * * * was vital to the due exercise of its corporate powers, to its continued existence, and to its success." Moore v. Security Trust & Life Ins. Co., 8 Cir., 168 F. 496, 500. This power to pro-

cure reinsurance by transfer of its assets is essential and necessarily implied. As the court in the Moore case said (168 F. at page 501), "The right to make such a transfer inhered in the corporate power of the defendant."

At the common law the power of an insurance company to write reinsurance was well known and as a general rule a corporation authorized in general terms to engage in the insurance business possessed the power to write reinsurance. Phœnix Ins. Co. v. Erie & W. Transportation Co., 117 U.S. 312, 323, 6 S.Ct. 750, 29 L.Ed. 873; Insurance Co. of North America v. Hibernia Ins. Co., 140 U.S. 565, 573, 11 S.Ct. 909, 35 L.Ed. 517. In Ohio the power to reinsure the risks of other companies was recognized as consistent with public policy. Commercial Mut. Insurance Co. v. Detroit Fire & Marine Insurance Co., 38 Ohio St. 11, 43 Am.Rep. 413. On page 16 of 38 Ohio St., 43 Am.Rep. 413, the Supreme Court of Ohio stated that "From a very early day re-insurance has been interdicted in that country [England] by act of parliament. * * * Whatever may have been the reasons for its adoption, however, it has certainly never been recognized as a part of the common law of this country. Our courts have refused to so regard it, or to find anything in re-insurance contrary to public policy and fair dealing. Upon this subject Mr. Justice Sedgwick said, in the early case of Merry v. Prince, 2 Mass. 176, 'That a contract of re-insurance is not prohibited by the principles of the common law is admitted by the parties. It is a contract which, in itself, seems perfectly fair and reasonable, and might be productive of very beneficial consequences to those concerned in this important branch of commerce.'"

Thus the power to reinsure was well known under the common law and agreements of reinsurance were valid long before legislation of the character here in question was first enacted. It would appear therefore that no empowering or validating legislation was required before an insurance company could validly enter into a reinsurance contract as reinsurer or as reinsured, and we accept this conclusion as true. However, in most states legislation regulating the power to reinsure has been passed and in this regard Ohio enacted legislation which we have recorded in footnote 3. Expressly the purpose of the Ohio regulatory legislation is to protect the interests of the policyholders.

In this case the parties were required by statutes in Illinois and Ohio to submit the proposed agreement to the Illinois and Ohio insurance authorities for approval. The American Old Line presented the agreement to the proper Illinois officials and properly obtained the approval thereof. The Ohio National presented the agreement to the proper Ohio official (the Superintendent of Insurance, who is also a member of the Commission) and obtained the approval of the Superintendent of Insurance acting alone. The agreement was then carried out by the parties and apparently has been accepted by the policyholders and creditors of both corporations. Ohio National now challenges the method of approval of the agreement as not authorized by the statute and insists that the reinsurance agreement be declared void for lack of approval by the Commission.

Sections 9353, 9354 and 9355 are plain if taken by themselves, and require notice to the policyholders, hearing by the Commission and approval by the Commission. Section 9352 is plain if taken by itself, and requires in all reinsurance cases the filing with the Superintendent of Insurance of a petition which the Commission "may approve." Section 9351 is the principal section of the Ohio statute but it is not plain, if taken by itself or with the other sections. Its language is ambiguous to say the least, and appears to authorize the approval by the Superintendent of Insurance acting alone in some reinsurance cases. Taken together these sections constitute a regulatory statute which is certainly far from clear and explicit. Nor has this difficulty been removed by judicial enlightenment, a fact which in itself is surprising.

The insurance authorities under the duty of enforcing this statute began to interpret the statute as not requiring the Commission to act in all reinsurance cases and as permitting the Superintendent of Insurance to act alone in some cases of reinsurance. Thus the practice grew that in cases such as here, approval of the agreement by the Superintendent acting alone was compliance with the statute. The fact that the language of the statute does present some doubt as to Commission's role in all reinsurance cases and the fact that nowhere in the statute does a failure of the Superintendent of Insurance to call the Commission together render the reinsurance agreement void, give support to the administrative practice. The consequences of declar-

ing void an agreement which has been executed many years ago and has this long been accepted by the policyholders and creditors, adds further support to the administrative interpretation only now being attacked.

Counsel for the Ohio National points out that judicial sanction to the method of approval used in this reinsurance case, will destroy the "safeguards designed by the Ohio legislature to protect the investing public from the dangers of promiscuous reinsurance." Counsel is not claiming that he represents the policyholders or that the interests of the policyholders have been affected adversely by the particular administrative approval challenged. Rather he is claiming that now the agreement of reinsurance should be declared void because Ohio National did not obtain approval by the Commission. In this connection we note that the reinsurance agreement received the approval of the insurance authorities of Illinois and the approval of the Superintendent of Insurance of Ohio. Furthermore the parties (Ohio National and American Old Line) have carried out the agreement and it has been accepted as satisfactory by the very people whom the statute was designed to protect. We believe that under the circumstances, to grant Ohio National's method of safeguarding the interests of the policyholders of both corporations would defeat the purpose of the statute and not effectuate it. It is hardly conceivable that at this late date Ohio National should suddenly become solicitous in behalf of the interests of the policyholders.

■ Nor is the fact that the language of the statute appears to be mandatory in form, important in this case. This same argument was advanced in Schick v. City of Cincinnati, 116 Ohio St. 16, 155 N.E. 555, and repelled even though the language was free from the doubt present here. The court concluded on page 557, of 155 N.E. that: "The construction that the portion of the statute indicated is directory only conforms more nearly to the ends of justice." Under the circumstances here the statement that "A failure to enforce the law does not change it" is not applicable. Louisville & N. R. Co. v. United States, 282 U.S. 740, 759, 51 S.Ct. 297, 304, 75 L.Ed. 672. We do not believe that the statute required approval by the Commission in every case of reinsurance, nor are we ready to condemn the particular administrative approval given. In State v. Brown, 121 Ohio St. 73,

166 N.E. 903, 904, the Supreme Court stated that "It has been held in this state that 'administrative interpretation of a given law, while not conclusive, is, if long continued, to be reckoned with most seriously and is not to be disregarded and set aside unless judicial construction makes it imperative so to do.' Industrial Commission v. Brown, 92 Ohio St. 309, 311, 110 N.E. 744, 745, (L.R.A.1916B, 1277)." Certainly judicial construction does not make it imperative so to do in this case, and we conclude that the District Court erred in visiting the penalty of destruction on the reinsurance agreement in question on the ground that the Ohio statute was not complied with.

■ *The Assumption of Bank Stockholder's Liability as Ultra Vires.* The District Court also concluded that stockholder's liability is not a risk which the Ohio National had corporate power to assume. This conclusion has its basis in the statutory prohibition against the acquisition of bank stock and in the statutory condemnation of undertaking a risk or obligation unrelated to the business of insuring lives. See footnotes 1 and 2. For purpose of discussing this conclusion of law it is necessary to accept as true the premise that the Ohio National did agree in fact to pay the bank stockholder's liability as part of the consideration for the transfer of the life insurance policies. We note that this point— whether part of the consideration was the assumption of stockholder's liability—was not disposed of by the District Court and indeed presents a serious question in this controversy.

Counsel for appellee observed in his brief that under the Ohio statutes the Ohio National could not acquire bank stock and could not assume an obligation which was not "connected with or pertaining to making insurance on life." But here the Ohio National acquired life insurance policies (which it can do pursuant to its power of reinsurance) and not bank stock. And it assumed an obligation related to the acquisition of these policies which obviously falls outside the scope of statutory condemnation. We perceive that this case is not one wherein the A corporation pays cash and incurs an obligation, for B's transfer of certain bank stock acquisition of which is prohibited by statute. Rather we understand this case to be one wherein the A corporation pays cash and incurs an obligation of B, for B's transfer of certain assets

(life insurance policies) acquisition of which is within its corporate powers.

We believe that since the Ohio National had the power to reinsure the policies of the American Old Line, it had the incidental power to pay for the policies acquired thereby. Nor can we visit judicial disapproval upon this transaction because the Ohio National paid in cash and with a promise, rather than in cash alone. Let us suppose this situation: A corporation has the power to reinsure the policies of B corporation but under the statutes it can not incur an obligation unrelated to the business of insuring lives; B assigns its policies to A; and in consideration therefor A pays $100,-000. It is plain that the payment in cash is incidental to the exercise of the power to reinsure and within the necessary corporate powers of A. Now suppose that A pays for the policies in another way, for instance, $50,000 in cash plus a promise to pay a $50,000 liability of B accruing in the future. It is inconceivable that under the hypothetical circumstances A is restricted to transacting its business in cash. Yet argument by appellee's counsel and the conclusion of law made by the District Court, would compel this restriction on Ohio National's way of doing business. We hold that the power to pay money in the future (by satisfying an obligation accruing in the future), as well as the power to pay money in the present, is encompassed in the power to buy insurance policies through reinsurance. We conclude therefore that the assumption of the bank stockholder's liability under the circumstances of our case, was not an ultra vires act of the Ohio National.

*Estoppel.* The power to reinsure the policies of another, as well as the power to assume the bank stockholder's liability of another, was considered by the District Court from the standpoint of ultra vires in corporate transactions. In this regard the District Court concluded that the Ohio National was not estopped to defend on the ground of ultra vires. We believe that the conclusion we have already reached as to the exercise of the two powers in question, may have been placed on the ground of estoppel alone. The assumption power under the circumstances stated above, was permitted by the statute. The reinsurance power was not prohibited but merely regulated by the statute. Nor was empowering or validating legislation necessary before the Ohio corporation could enter a contract of reinsurance. There was no lack of power to make the reinsurance contract and the most that can be said for the defendant's side is that the method of its approval may have been irregular. The assertion of ultra vires by the Ohio National under the circumstances of this case, does not commend itself to us. We need say no more than we have already, on the inapplication of the doctrine of ultra vires to this case. See London & Lancashire Indemnity Co. v. Fairbanks S. Shovel Co., 112 Ohio St. 136, 147 N.E. 329, 331.

We conclude that the Ohio National can not prevail on the grounds urged before this court. We state again that the question—whether as part of the consideration for transfer of the policies, the Ohio National agreed to pay the bank stockholder's liability of the American Old Line—is a serious one in this controversy and stands undisposed of by the District Court. The judgment as now grounded can not stand, and it is reversed.